# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[1] CARLOS MANUEL COTTO-CRUZ,
[10] PEDRO A. OCASIO-HERNANDEZ,
[21] PABLO DE LA CRUZ-ARIAS,
[27] ARSENIO LABORDE-FIGUEROA[1],

Defendants.

CRIMINAL NO. 22-213 (ADC)(HRV)

## OMNIBUS MEMORANDUM AND ORDER

The above-captioned defendants have been charged in a six-count indictment with conspiracy to possess with intent to distribute controlled substances, aiding and abetting each other in the possession with intent to distribute controlled substances, and possession of firearms in furtherance of drug-trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 924(c). (Docket No. 3). The drug-distribution offenses are alleged to have occurred in the Municipality of San Juan, and more specifically in the Vista Hermosa, Villa España, and Luis Llorens Torres housing projects. (*Id.*) The indictment further alleges that the means and manner in which the members of the

---

[1] Defendant Laborde-Figueroa has pleaded guilty and is awaiting sentencing. (Docket Nos. 1549, 1609). Therefore, any trial-related motions as to him are moot.

1

conspiracy would accomplish its object, included possessing firearms, planning acts of violence, including shootings against members of the same drug organization or rival drug gangs, "to maintain control of the drug trafficking operations, and intimidate [said] rival drug trafficking organizations." (*Id.* at 9-10). Trial in the present case is set to begin on July 29, 2024. (Docket No. 1641).

The Presiding District Judge has referred to me several pending motions filed by the above-captioned defendants "for disposition or Report and Recommendation as proper." (Docket Nos. 1659, 1660 and 1664). I will address here only the motions that are appropriate for disposition.[2]

## I.   Docket No. 1390 - Motion in Limine (Evidence of Case 19-381)

Defendant Carlos Cotto-Cruz (hereinafter "Cotto-Cruz") moves the Court to exclude any reference by the government of Criminal Case No. 19-381 (ADC), which the United States has included in its October 13, 2023, designation of evidence. (Docket No. 1331). Cotto-Cruz argues that such evidence should be excluded under Fed. R. Evid. 401 and 403, and because it is a subterfuge for presenting inadmissible character evidence in violation of Fed. R. Evid. 404(a) and 404(b). The crux of Cotto-Cruz' contention is that the facts in criminal case 19-381, which involved an incident at a gas station in which Cotto-Cruz is alleged to have discharged a firearm inflicting a bullet wound on the victim, are completely irrelevant to the charged conspiracy. For instance, said incident allegedly

---

[2] In separate filings, the undersigned will address those matters that require the issuance of a report and recommendation and/or an evidentiary hearing.

2

occurred in the municipality of Caguas, whereas the settings of the alleged drug-trafficking conspiracy charged in the present case are the Luis Llorens Torres and Vista Hermosa public housing projects. Cotto-Cruz characterizes the incident as an isolated or random event. To allow the government to present said evidence, says Cotto-Cruz, will create confusion to the jury thus causing unfair prejudice and will permit an improper inference that the alleged prior bad act somehow proves that he was involved in drug trafficking or possessed firearms in furtherance of said drug offenses. Lastly, Cotto-Cruz alerts the Court about the fact that prior to the government requesting dismissal of case 19-381, he had moved to suppress his identification as being the result of impermissibly suggestive procedures.

The government opposes (Docket No. 1426) arguing that evidence that Cotto-Cruz possessed a firearm as alleged in 19-381, is "direct and intrinsic evidence of a violent drug trafficking gang in which members carried firearms." Further, it is the United States' position that since the defendant is charged in this case with a violation of 18 U.S.C. § 924(c), the facts in 19-381 showed that Cotto-Cruz carried firearms during the span of the conspiracy. According to the government, the evidence at issue is relevant and inextricably intertwined with the charged conduct. In the alternative, the government contends that the facts in 19-381 are admissible under Fed. R. Evid. 404(b) and through its response in opposition provides 404(b) notice to the defendant.

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. This is a very low threshold because the evidence at issue "need not definitely resolve a key issue in the

3

case', but rather 'need only move the inquiry forward to some degree.'" *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021)(*quoting Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)). Relevant evidence is generally admissible; "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. On the other hand, pursuant to Federal Rule of Evidence 403, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Under Fed. R. Evid. 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of other crimes, wrongs or acts may be admissible, however, "for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This provision is not triggered by evidence that is inextricably intertwined or intrinsic to the charged offense. *See United States v. Robles-Alvarez*, 874 F.3d 46, 50-51 (1st Cir. 2017)(cleaned up).

The First Circuit applies a two-part test to determine the admissibility of 404(b) evidence. "First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question." *United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995). If this "special relevance" is established, the court must then apply Rule 403 "to determine whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice." *Id.* (*quoting* Fed. R. Evid. 403).

4

Whether proposed as evidence intrinsic to the charged offenses or 404(b) evidence, I find that the allegations in 19-381 should be excluded pursuant to Fed. R. Evid. 403.  For starters, I am not completely persuaded that the facts of case 19-381 are inextricably intertwined with the facts of the alleged armed drug-trafficking conspiracy. The only elements that the government offer are that the alleged incident involved a firearm and that it occurred during the span of the conspiracy.  However, even applying the standard that the government advocates for[3], the facts in 19-381 do not appear to be (1) an offense that constitutes a part of the transaction that serves as basis of the criminal charge; nor (2) necessary for the government to tell a comprehensive and coherent story of the charged offense.

For example, there is no evidence proffered that the incident at the gas station was connected in any way, or was part and parcel of, a specific transaction of the charged conspiracy, which is drug trafficking in certain San Juan area housing projects.  Further, the record of this case reveals that through testimony of cooperating witnesses, and other evidence, the government intends to establish the existence of a large-scale drug trafficking conspiracy in which firearms were possessed in furtherance thereof.  The apparently isolated incident of an argument at a gas station that escalated into a violent aggression is not necessary to tell a coherent story of the charged offense, nor does it create a chronological or conceptual void in the story of the charged drug conspiracy.

---

[3] The government cites dicta in *United States v. Bowie*, 232 F.3d 923, 927-29 (D.C. Cir. 2000), for the proposition that the formulation of an inextricably intertwined standard includes scenarios where the evidence "completes the story of the crime on trial" or "arose out of the same transaction or series of transactions as the charged offense."

It is, however, significantly inflammatory. And it has the potential of confusing the jury as to why such random incident proves any element of the charged offenses. I get that the incident tends to show that the defendant possessed firearms. But the government has not demonstrated that Cotto-Cruz' alleged possession of a firearm on August 17, 2018, was in furtherance of any drug-trafficking activities. On the other hand, the violent incident may move the jury to act on emotion. *See United States v. DiRosa*, 761 F.3d 144, 153 (1st Cir. 2014)(*quoting Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)("Unfair prejudice 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'"). Therefore, even if the government had established that case 19-381 was somehow inextricably intertwined with the charged offense, it should be excluded on unfair prejudice grounds under Fed. R. Evid. 403.

For much the same reasons, even if characterized as 404(b) evidence and the government can be said to have established the special relevance prong of the analysis, Criminal Case 19-381 (ADC) should likewise be excluded on unfair prejudice grounds. I add that in making my ruling, I am taking into account the fact that Cotto-Cruz appeared ready to challenge his identification in case 19-381 as being impermissibly suggestive when the government moved to dismiss the case. The government made such a strategic choice at its own peril, perhaps hoping that it would be allowed to bring the evidence in as part of the drug-conspiracy case. But under such a scenario, to establish reliability and thus relevance, the Court would have to conduct a full-blown suppression hearing before ruling on admissibility of the proffered evidence. In my view, that bolsters the finding of unfair prejudice, and further undermines the government's position. *See*

*United States v. Gilbert*, 229 F.3d 15, 25 (1st Cir. 2000)(affirming the exclusion by the district court of evidence on Fed. R. Evid. 403 grounds "where the other act evidence was only marginally reliable, of marginal probative value, and so undeniably explosive.").

In view of the above, the Motion *in Limine* at Docket No. 1390 is **GRANTED.** The government is precluded from presenting evidence or referring to Crim. Case 19-381 in its case in chief.

### II.    *Docket No. 1393 - Motion for Severance or Alternatively in Limine*

Defendant Pedro A. Ocasio-Hernandez (hereinafter "Ocasio-Hernandez") requests to be severed from defendant Cotto-Cruz, or in the alternative for a ruling *in limine* to exclude from their join trial evidence of Criminal Case 19-381 (ADC). This motion is **MOOT** in light of my ruling above as to Docket No. 1390 excluding the evidence.

### III.    *Docket No. 1392 – Motion in Limine (Weapons Evidence)*

Defendants Cotto-Cruz and Ocasio-Hernandez request that the court exclude from the government's case in chief all objects purported to be firearms and any experts that would offer testimony as to the objects meeting the definition of a firearm found in 18 U.S.C. § 921(a)(3). (Docket No. 1392). These defendants argue that exclusion is warranted because the government has failed to comply with Fed. R. Crim. P. 16(a)(1)(G). In essence, their contention is that to obtain a conviction under 18 U.S.C. § 924(c), the government must prove that an object is real firearm, and since the government has failed to announce any experts that would so testify, any objects purported to be firearms must be excluded. (*Id.*)

The United States ripostes that case law does not require expert testimony to prove that a weapon is a real firearm. The government maintains that lay opinion testimony is sufficient. I agree.

"Although § 924(c) requires proof that the gun is real, the government's proof need not reach the level of scientific certainty." *United States v. Cruz-Diaz*, 550 F.3d 169, 173 (1st Cir. 2008)(*quoting United States v. Roberson*, 459 F.3d 39, 47 (1st Cir. 2006)). Descriptive lay testimony is sufficient. *Id.* Indeed, "lay opinion testimony may be employed to propel a finding that an object is in fact a real gun." *United states v. Taylor*, 54 F.3d 967, 975 (1st Cir. 1995)(citations omitted); *see also United States v. Martinez-Armestica*, 846 F.3d 436, 441 (1st Cir. 2017)("Along with other circuits, we have squarely rejected the argument that . . . expert testimony is necessary" to prove that an object is a real gun.). The motion *in limine* at Docket No. 1392 is **DENIED.**

### IV.   Docket No. 1394 – Motion in Limine (Autopsy and Crime Scene Photos and Videos)

Cotto-Cruz and Ocasio-Hernandez also move *in limine* to preclude the government from introducing into evidence photographs of crime scenes and videos, as well as photographs and reports of autopsies of the San Lorenzo murders which are not charged in the Indictment. Three grounds are generally advanced. First, the evidence at issue is irrelevant because the murders are not linked to them. Second, the depiction of heinous, macabre, ghastly, gruesome, or appalling images should be excluded under Fed. R. Evid. 403 because even if relevant, such evidence would be unfairly prejudicial and likely to inflame the jury. Third, that the autopsy videos, photographs, and report should be excluded because the government has not notified the pathologist that created the

images and drafted the report under Fed. R. Crim. P. 16(a)(1)(G); therefore, such testimonial evidence is inadmissible under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 317, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

In response, the government first informs that it will not seek to introduce at trial any videos or photos of the autopsies of the victims. (Docket No. 1427 at 2). The government is silent, however, as to autopsy reports. As to videos or photos of the San Lorenzo murders crime scene, the United States submits that it will not seek to introduce hundreds of photos or videos, but rather, a "small number of representative photos and videos to display to the jury." (*Id.*) The government promises to "avoid gratuitous depictions of gore." (*Id.*) According to the government, the San Lorenzo murders are relevant to proving the existence of a conspiracy and to corroborate the testimony of cooperating witnesses. The United States proposes to meet and confer with defense counsel to select the specific photographs to be used and that if the parties are unable to agree, that the Court rule on the issue of admissibility within the context of the trial.

With respect to autopsy photos and videos, given the government's representation, the matter has become moot. I assume the same applies to any autopsy reports. To the extent that the government does intend to introduce into evidence any objected-to autopsy reports, it has waived any argument in opposition to the defendants' motion *in limine* by not addressing the *Melendez-Diaz* contention. Accordingly, I find that the motion *in limine* should be granted as to the designated autopsy reports.

The motion should be denied, however, as to the crime scene photos of the San Lorenzo murders. The government is correct that the prosecution is entitled to prove its case by evidence of its own choice. *United States v. Dudley*, 804 F.3d 506, 516 (1st Cir.

2015)(*citing Old Chief*, 519 U.S. at 183). Moreover, admitting gruesome photographs is not an abuse of discretion "where those photos have a nontrivial probative value." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007). The Court is only required to avoid unfair prejudice, not "scrub the trial clean of all evidence that may have an emotional impact, where the evidence 'is part of the government's narrative.'" *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008)(*citing United States v. Dean*, 135 F. Supp. 2d 207, 209-10 (D. Me. 2001)). And with the government's proposal to include defense counsel in the process of selecting the photos to be presented, so as to minimize the impact they may have, any danger of unfair prejudice is attenuated.

In view of the foregoing, the motion *in limine* at Docket No. 1394 is **GRANTED** in part, **DENIED** in part, and **MOOT** in part. It is **GRANTED** as to the autopsy reports to the extent the government still intends to move them into evidence, **DENIED** as to the crime scene photos and **MOOT** as to the autopsy photos and videos.

### V.     *Docket No. 1397 – Motion in Limine (Drug-Related Evidence)*

Defendants Cotto-Cruz and Ocasio-Hernandez request the exclusion of drug-related evidence claiming that the government has failed to fully comply with the requirements of Fed. R. Crim. P. 16(a)(1)(G) anent expert disclosures. Specifically, these defendants argue that the government filed drug expert notices without pertinent Rule 16 information such as the corresponding lab reports or curriculums vitae of some of the experts detailing their qualifications. Additionally, the defendants move to exclude designated fentanyl evidence, a controlled substance that is not alleged in the indictment. Such evidence, the defendants argue, is irrelevant, unfairly prejudicial, and/or would constitutes a prejudicial variance or constructive amendment of the indictment.

The government's response at Docket No. 1444 is not a model of clarity. For example, the government cites Local Rule 16(c)(7) for the proposition that expert evidence needs to be disclosed 14 days prior to the scheduled trial. Such local rule, however, applies in the context of initial scheduling orders in civil cases. Then the government maintains that it submitted all curriculums vitae of the experts, something that the defendants vehemently contest. *See* Reply, Docket No. 1464. Next the government argues that the defendants have not requested a suppression hearing "to address the matter as to exclusion of expert witnesses in [sic] its merits." (Docket No. 1444 at 2). In any event, says the government, the defendants can always cross-examine the experts as to their qualifications.

The government's response in opposition is baffling. It completely misses the point of the defendants' arguments in their motion which has to do with failure to comply with the tenets of Rule 16 in relation to expert disclosures. Notwithstanding, it appears from the record that many, if not all, of the issues raised by these defendants in the motion *in limine* have been addressed. The minutes of proceedings for the pretrial conference held on January 25, 2024, reflect that the Court considered the discovery dispute, allowing the parties to argue, and ultimately ruling that it "will not allow any additional discovery unless it is related to any of the event(s) that have been previously disclosed." (Docket No. 1641 at 2). The minutes also reflect that defense counsels were to inform at the next pretrial conference whether they will stipulate to the qualifications of chemists (Id. at 3), suggesting that the matter of expert disclosures was discussed. Lastly, during the same pretrial conference, the Court continued the trial, originally set to begin on March 4, 2024, to July 29, 2024. (*Id.*)

Continuing the trial, which eliminates any possibility of prejudice, warrants that the defendants' motion *in limine* be rejected as to the matter of the expert disclosures. *See* Fed. R. Crim. P. 16(d)(2); *see also United States v. Bresil*, 767 F.3d 124, 128 (1st Cir. 2014)(prejudice must be shown in the context of a Rule 16 claim). To the extent that the expert disclosures are, in their view, still non-compliant, the defendants should renew their *motion in limine*.

With respect to the designated evidence of fentanyl, the United States argues that no variance or constructive amendment of the indictment will occur in this case since "Defendants were charged of [sic] conspiracy to possess controlled substances and presenting evidence of Fentanyl among other controlled substances seized during an overt act is part of evidence [sic] goes to prove the conspiracy." (Docket No. 1444 at 3). The government does not address the defendants' argument regarding unfair prejudice under Fed. R. Evid. 403.

Here, allowing evidence of fentanyl to be introduced at the trial will not cause a constructive amendment of the indictment nor a prejudicial variance. When the charged offense is 21 U.S.C. § 841(a), the type or identity of a controlled substance is not an element of the offense. Thus, and particularly in conspiracy cases, any controlled substance may form part of the evidence without altering the terms of the Indictment or causing prejudice. *See United States v. Dowdell*, 595 F.3d 50, 66-69 (1st Cir. 2010); *see also United States v. Austin*, 765 Fed. Appx. 920, 922-23 (4th Cir. 2019).

Nonetheless, I do find that allowing the evidence of fentanyl will cause unfair prejudice to the defendants. As stated above, the government has waived any argument to the contrary by failing to address the defendants' contention. I agree with the

defendants that the widespread dissemination and awareness campaigns about the dangers of fentanyl make its admission into evidence highly inflammatory and presents an intolerable risk of jury confusion. This is particularly so when the government, having an opportunity to charge possession and distribution of said controlled substance, chose not to do so. *Cf. United States v. Joseph*, 978 F.3d 1251, 163-64 (11th Cir. 2020)(testimony about the dangers of fentanyl not unfairly prejudicial where the defendant was actually charged with a crime involving fentanyl).

Moreover, excluding evidence of fentanyl does not undermine the government's case since it will presumably be able to establish the possession with intent to distribute of the rest of the controlled substances that it did charge in the indictment. That being the case, the probative value of fentanyl is significantly outweighed by the danger of unfair prejudice.

For the reasons stated above, the motion *in limine* at Docket No. 1397 is **GRANTED** in part and **DENIED** in part without prejudice. It is granted as to fentanyl. It is denied without prejudice of renewal as to the government's alleged non-compliance with the expert disclosure obligations.

### VI.   Docket No. 1551 – Motion in Limine (Crawford v. Washington)

This motion by defendant Pablo De La Cruz-Arias has been ruled upon by the Presiding District Judge and determined to be **MOOT** given the government's representation that it will not seek to elicit the statements and evidence at issue. *See* Docket No. 1641 at 3.

### VII. Docket No. 1559 – Motion for Disclosure of Brady[4] Material

In this motion, co-defendants Cotto-Cruz and Ocasio-Hernandez argue that in clear disregard of its *Brady* obligations, the government has failed to provide evidence or information in its possession about other individuals that failed to identify them as members of the alleged conspiracy. Similarly, the defendants claim that the government has not produce exculpatory evidence regarding the San Lorenzo murders not being relevant to the charged drug-trafficking conspiracy.  The defendants ask the Court to order the production of all documents, statements and reports that show any cooperating defendant, informant or sources related to the Llorens-Torres, Vista Hermosa, and Villa España housing projects that failed to identify Cotto-Cruz and Ocasio-Hernandez as participants in the conspiracy. They also request any evidence showing a lack of connection between the San Lorenzo murders and the alleged drug conspiracy charged in the present case.  As to this last request, the defendants argue that the government should be required to review the files of a different case, Criminal No. 23-273 (SCC), in search of potentially exculpatory evidence.

The government responds by noting that it has provided all potential *Brady* material in is possession and will continue to do so. (Docket No. 1601).  It further claims that the defendants have not been able to articulate with specificity what exculpatory evidence has not been disclosed and that the defendants' *Brady* material request is

---

[4] Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government must disclose exculpatory and impeachment evidence when such evidence is material to guilt or punishment.

speculative. While maintaining that the defendants are not entitled to discovery from other investigations or indicted cases, the government asserts that it has reviewed its files in Criminal No. 32-273 (SCC), and they do not contain any *Brady* material.  In fact, a cooperator apparently corroborates the theory of the turf war with Nelson Torres-Delgado, AKA "El Burro".  The government also affirms that it has never changed its theory regarding the relevancy of the San Lorenzo murders to the instant case for being predicated on a battle for territory and for having the tendency to further the objectives of the larger drug conspiracy.

It is black-letter law that "the government has a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011)(citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)).  Inasmuch as the government is primarily responsible for determining what evidence it must disclose under *Brady*, "the government's decision about disclosure is ordinarily final unless it emerges later that exculpatory evidence was not disclosed." *Id.* at 628.  A different situation arises if the defendant has requested specific materials, but the government contends the requested materials are not discoverable.  In such a case, the Court may perform an in-camera review of the materials at issue. *Id.*   Critically, "[t]o justify such a review, the defendant must make some showing that the materials in question could contain favorable, material evidence" and "[t]his showing cannot consist of mere speculation." *Id.*  On the contrary, the defendant has to articulate with some specificity what evidence he hopes to find. *Id.*

The defendants' *Brady* request rest largely on assumptions and speculation. For instance, the defendants generally assert a "lack of testimonial evidence against them which is atypical when compared to" other cases in this district. (Docket No. 1559). The defendants also state, without establishing the basis for such knowledge, that "it is obvious that the government interviewed, contacted and debriefed numerous other individuals" in addition to the single witness identified by the government in proffers. (*Id.* at 2). They further speculate, by extrapolating from *Jencks*[5] materials received, that "it is evident that the Government possesses information provided by other individuals who failed to identify the appearing defendants as members of the drug conspiracy in the housing projects they lived or conducted criminal activity." (*Id.* at 3). With respect to the San Lorenzo murders being the result of a turf war between the alleged organization of Cotto-Cruz and that of "El Burro", the defendants claim to know, again without specifying how, that cooperating individuals who reside in Vista Hermosa, Llorens Torres and Villa España, and members of El Burro's criminal organization, do not corroborate the government's theory. (*Id.*) In a separate, but related filing (Docket No. 1634), the defendants aver that "the government and/or the law enforcement agencies **must have** a sea of notes, reports, memorandums, and transcripts of informants, unindicted conspirators, or indicted conspirators, who were interviewed prior, during and after the filing of the present case that do not identify Cotto as a leader or participant of the DTO, as well as Ocasio as a participant in the DTO."

---

[5] Jencks Act, 18 U.S.C. § 3500.

Because the defendants fail to articulate with specificity the existence of particular evidence that would qualify as favorable or material, I must deny their request. The United States has affirmatively represented that it understands its *Brady* obligations, that it has complied and will continue to comply with said obligations. Under the circumstances, the Court must accept such a representation. And the government is aware that there are consequences for failure to comply. Fed. R. Crim. P. 5(f); *see also United States v. Flores-Rivera*, 787 F.3d 1, 17-21 (1st Cir. 2015).

The motion for disclosure of *Brady* material at Docket No. 1559 is **DENIED**.

### VIII.  Docket No. 1628 – Motion in Limine (Government Witness)

Cotto-Cruz and Ocasio-Hernandez request that the Court preclude the government from presenting a "newly announced" witness arguing that his testimony is irrelevant, unfairly prejudicial and will bring inadmissible character evidence. (Docket No. 1628). The defendants also seek exclusion on the grounds that the testimony of this witness will potentially violate the confrontation clause and *Crawford v. United States*, 541 U.S. 36 (2004) by presenting hearsay evidence he obtained from third parties. (*Id.*)

In opposition, the government contends that the defendants, who had been requesting evidence to establish the connection, or lack thereof, of the San Lorenzo murders, now move the Court to exclude a witness that will supply such connection. (Docket No. 1675). The government proffers in detail the testimony of the witness. (*Id.*)

The challenged testimony should be allowed. The threshold for relevance being low, and in view of the detailed proffer by the government, I find that the testimony is relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice. The alleged turf war between the drug trafficking organization of Cotto-Cruz

and AKA El Burro, and the acts of violence, including the San Lorenzo murders, tend to show both the existence of a drug-trafficking conspiracy and defendants' participation in it. *See United States v. Rivera-Calderon*, 578 F.3d 78, 95-99 (1st Cir. 2009). What the defendants assert regarding the personal knowledge of the witness or the reliability of his testimony due to him not being a resident of the San Juan housing projects named in the indictment, is something that goes to the weight and credibility to be given to the testimony, not its admissibility. *See United States v. Gonzalez-Ramirez*, 561 F.3d 22, 29 (1st Cir. 2009)(*citing Cummings v. Std. Register Co.*, 265 F.3d 56, 65 (1st Cir. 2001))("while shortcomings in certain testimony might reduce its probative value, they do not necessarily render it inadmissible.")

Lastly, with respect to the confrontation clause/*Crawford* argument, it is rather undeveloped. But the defendants are free to raise objections during the trial should any of the elicited testimony fall under the testimonial hearsay category.

The motion *in limine* at Docket No. 1628 is **DENIED.**

### IX. Docket No. 1634 – Supplemental Motion for Disclosure of Brady Material

For the reasons outlined in section VIII above, this motion is also **DENIED.**

**SO ORDERED**

In San Juan, Puerto Rico this 12th day of April, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE